UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH JONES-STOTT,

                                  CASE NO. 04-CV-40263-FL

         Plaintiff,           JUDGE PAUL V. GADOLA

                                  MAGISTRATE JUDGE PAUL J. KOMIVES

v.

KEMPER LUMBERMENS
MUTUAL CASUALTY COMPANY
and HENRY FORD HEALTH SYSTEM
LONG TERM DISABILITY PLAN,

         Defendants,

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE
ORDER THAT DISCOVERY OUTSIDE OF ADMINISTRATIVE RECORD SHOULD
NOT BE HAD IN ERISA BENEFITS CASE (Doc. Ent. 14)**

**Table of Contents**

I.     **OPINION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     **A.**     **Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     **B.**     **The Complaint** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
     **C.**     **The Instant Motion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     **D.**     **Applicable Law and Standard of Review** . . . . . . . . . . . . . . . . . . . . . . . . . **7**
          **1.**     **Employee Retirement Income Security Act of 1974 (ERISA)** . . . . . . . **7**
          **2.**     **Standard of Review under ERISA** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
          **3.**     **Evidence to Be Considered under ERISA** . . . . . . . . . . . . . . . . . . . . . . **9**
     **E.**     **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
          **1.**     **Parties' arguments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
          **2.**     **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

II.    **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

I.      **OPINION**

A.      **Background**

According to plaintiff, "[o]n or about September 17, 2001, [she] became entitled to

payment of monthly disability benefits under [a long term disability plan]."  (Doc. Ent. 3

[Compl.] ¶ 7).[1]  In a July 3, 2003 report, Dr. Robert Ennis (an orthopedic surgeon) stated in part

that "[f]indings on electrodiagnositc study should be completed and documented to evaluate

objective evidence of continued neurologic impairment."  Rsp. ¶ 6, Ex. 2.  Around July 9, 2003,

plaintiff "received a letter from [Mark A. Stringham of Kemper] stating that she [was] not

entitled to disability benefits."  Compl. ¶ 8; Rsp. Ex. 3; (Doc. Ent. 15 Ex. A).  In part, the letter

stated that "the documentation provided by your physician does not substantiate your disability

status."  (Doc. Ent. 15 Ex. A at 1); Rsp. Ex. 3 at 1.  "In order to substantiate that you cannot, in

fact, perform the essential duties of your occupation, your providers would have to submit

physical findings such as loss of motion, nerve root involvement, loss of muscle strength and/or

weakness, or any other diagnostic testing which documents the presence of significant

impairments in physical functioning."  Rsp. ¶ 7, Ex. 3 at 4; (Doc. Ent. 15 Ex. A).  The letter also

stated that a written request for review of the claim must be made within sixty (60) days of

plaintiff's receipt of the July 9, 2003 letter.  (Doc. Ent. 15 Ex. A at 5); Rsp. Ex. 3 at 5.

In a September 8, 2003 letter, then plaintiff's counsel Barry D. Adler wrote to Kemper.

In this letter, Mr. Adler identified his office as having been retained to represent plaintiff.  In

part, the letter also served as an appeal of the July 9, 2003 determination and to request a copy of

the administrative record.  Furthermore, the letter noted that additional medical records would be

---

[1]A copy of the plan is attached to plaintiff's complaint as Tab A.

2

forthcoming.  (Doc. Ent. 15 Ex. B).  On September 9, 2003, Kim Marion of Kemper

acknowledged receipt of the request for an appeal.  The letter stated in part that, "[o]nce a claim

has been denied, it is the claimant's responsibility to furnish information to support the

disability[,]" and "[u]nfortunately, no additional information was enclosed with [the] appeal."

(Doc. Ent. 15 Ex. C).  On September 24, 2003, Sonia A. Williams of Kemper replied to Adler -

apparently including a copy of the administrative record.  (Doc. Ent. 20 Ex. J).

  On October 17, 2003, current plaintiff's counsel, Nadia Ragheb, received plaintiff's file

from Adler.  (Doc. Ent. 15 Ex. D).  Ragheb called Kemper on October 20, 2003.  The Kemper

representative with whom Ragheb spoke (apparently Williams) noted:  "WENT OVER

MEDICAL INFO SHE HAS IN HER POSSESSION.  PER ATTY HAS LOTS OF MED INFO.

POINTED OUT TO ATTY THAT MOST OF MED INFO SHE HAS IS A COPY OF THE

CLAIMANTS CLAIM FILE FROM COORD, CAN TELL BY LEFT CORNER TOP OF PAGE

HAS NUMBERS AND SWILLIA2, ATTY REALIZED MOST OF MED RECS WERE FROM

COORD[.]"  (Doc. Ent. 20 Ex. K).  In a letter dated October 20, 2003, Ragheb wrote to Williams

of Kemper, in part to confirm that Ms. Ragheb would be representing plaintiff in place of Mr.

Adler and to request an extension of time within which to supplement the medical information

regarding plaintiff's appeal.  She stated that she "just received this file from Mr. Adler on

October 17, 2003."  (Doc. Ent. 15 Ex. D).

  In an October 20, 2003 report, Dr. Martin G. Mendelssohn (an orthopedic surgeon)

stated: "Based on the medical documentation available, the fact that the claimant has no

significant neurosurgical objective findings other than MRI findings which do not correlate with

her clinical exam, a functional impairment that would preclude the claimant from her regular

occupation as a Care Partner, which is a light physical exertion level, from 3/25/02 and beyond cannot be substantiated." Rsp. ¶ 9, Ex. 4 at 3; (Doc. Ent. 15 Ex. E).[2]

In a letter dated November 4, 2003, Ragheb wrote to Williams of Kemper in part to enclose certain records in support of plaintiff's appeal. (Doc. Ent. 15 Ex. F); Compl. ¶ 9. Ms. Ragheb contended that plaintiff qualified "for long term disability benefits as her condition [had] continuously disabled her from performing the usual functions of her occupation." (Doc. Ent. 15 Ex. F at 4).

In a November 17, 2003 report, Dr. Mendelssohn stated in part: "based on the medical documentation, the lack of any significant objective findings, a functional impairment that would preclude the claimant from her regular occupation as a care partner for Henry Ford Health Systems, which is a light to medium physical exertion level, beyond 03/25/02 cannot be substantiated." Rsp. ¶ 10, Ex. 5 at 2; (Doc. Ent. 15 Ex. G).

Kemper denied plaintiff's appeal on November 21, 2003. Compl. ¶ 9; (Doc. Ent. 15 Ex. H). In part, the denial letter signed by Williams states: "the Kemper Services Appeal Committee found that the submitted documents did not contain medical evidence (i.e. medical evidence revealing a functional impairment with respect to neurological physical examination findings, abnormal diagnostic findings, a Functional Capacity Evaluation, documentation revealing the intensity and severity of symptomatology, etc.) to substantiate a significant functional impairment that would have prevented your client from performing the essential functions of **her own** occupation." (Doc. Ent. 15 Ex. H at 2).

---

[2]According to defendants, Kemper had plaintiff's file reviewed, because she "had taken so long to provide any information[.]" Mtn. Br. at 4.

On March 31, 2004, plaintiff's counsel wrote to the appeals coordinator.  In part, the letter stated: "Upon receipt of this letter, please forward all documents and materials relevant to Ms. Stott's claim to my attention, including any and all reports from peer Review physicians, outside physicians, or any other doctors or entities that Kemper relied upon in denying Ms. Stott's claim."  (Doc. Ent. 18 [Rsp.] Ex. 1).[3]  According to plaintiff, the administrative record was not provided.  Rsp. ¶ 3.

## B.    The Complaint

On September 21, 2004, plaintiff filed the instant case against Kemper Lumbermens Mutual Casualty Company and Henry Ford Health System Long Term Disability Plan alleging two counts:  (I) action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover full benefits and (II) action under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to remedy breach of fiduciary duty.  On January 24, 2005, Judge Gadola entered an order of dismissal without prejudice for failure to prosecute.

On January 31, 2005, plaintiff filed a motion to reopen case.  Judge Gadola granted plaintiff's motion on February 16, 2005.  On February 23, 2005, defendants filed an answer to the complaint with affirmative defenses and a motion to dismiss Count II of the complaint.  Judge Gadola granted defendants' motion on May 3, 2005.

A scheduling conference was held on August 31, 2005.  At the conference, plaintiff's counsel expressed her intention "to conduct the depositions of the [d]efendants' employees responsible for denying the claim, as well [as] the yet to be identified medical reviewer that

_____

[3]According to defendant, "[p]laintiff's evidence does not demonstrate that the letter was actually sent, it is not signed, and there is no copy of the letter in the administrative file of Kemper[.]" Rpl. at 3.

[defendants'] employees referred to in their denial letters." Rsp. Br. at 1-2. Also, plaintiff's

counsel indicated that "the denial letters did not identify the doctors in question and that

[p]laintiff had not been provided the administrative record as is required by the Plan and as was

requested in writing." Rsp. Br. at 2. On the same day, Judge Gadola signed an order setting the

deadline for a motion for protective order with regard to discovery for September 23, 2005 and

providing that a motion deadline would be set after resolution of the motion for protective order.

On September 8, 2005, plaintiff's counsel was provided with a copy of the administrative

record for the first time. Rsp. ¶ 4; Rsp. Br. at 2..

## C.   The Instant Motion

On September 19, 2005, defendants filed a motion for entry of a protective order under

Fed. R. Civ. P. 26(c) prohibiting discovery in an ERISA case. (Doc. Ent. 14 [Mtn.]).

Defendants argue that "pursuant to established Sixth Circuit law, no discovery of an ERISA

claim for benefits is allowable (outside of the production of the administrative record, which has

already been provided to Plaintiff in this case), unless Plaintiff makes credible allegations of

procedural due process or procedural bias." According to defendants, plaintiff has not alleged

either. Mtn. ¶ 3. Defendants request entry of an order "prohibiting [p]laintiff from engaging in

any discovery in this case." Mtn. at 2.[4] On the same day, Craig G. Penrose filed an affidavit

regarding defendants' motion. (Doc. Ent. 15 [Penrose Affid.]).

Plaintiff filed a response to defendants' motion on October 3, 2005. (Doc. Ent. 18

[Rsp.]). In support of her position, plaintiff argues that "[i]n an ERISA action, [p]laintiff is

---

[4]On September 19, 2005, Judge Gadola referred defendants' motion to me for hearing and determination. (Doc. Ent. 16). On September 27, 2005, my deputy clerk noticed the motion for hearing on October 17, 2005. (Doc. Ent. 17).

entitled to take limited discovery relative to the issues of a procedural challenge to the administrator's decision or to alleged lack of due process."  Rsp. Br. at 6-7.

Defendants filed a reply on October 7, 2005.  (Doc. Ent. 19 [Rpl.]).  On October 7 and 13, 2005, Craig G. Penrose filed supplemental declarations.  (Doc. Entries 20 and 21) [Penrose Decl. 2]).  On October 17, 2005, I held a hearing regarding defendants' motion.  Attorney Nadia Ragheb appeared on behalf of plaintiff, and attorney Craig G. Penrose appeared on behalf of defendants.

**D.      Applicable Law and Standard of Review**

**1.      Employee Retirement Income Security Act of 1974 (ERISA)**

Title 29 of the United States Code governs labor.  Chapter 18, which covers the employee retirement income security program, comprises the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.  It is the policy of ERISA "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  Under ERISA, "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

**2.      Standard of Review under ERISA**

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 115 (1989). "[F]actual determinations of plan administrators in actions brought under 29 U.S.C. § 1132(a)(1)(B) are subject to de novo review." *Rowan v. Unum Life Insurance Company of America*, 119 F.3d 433, 435 (6th Cir. 1997). "[F]or purposes of actions under § 1132(a)(1)(B), the de novo standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." *Firestone Tire and Rubber Company*, 489 U.S. at 115.

"In cases in which a plan administrator is given no discretionary authority by the plan, review of the plan administrator's decision by the district court–as well as the court of appeals– is *de novo*, with respect to both the plan administrator's interpretation of the plan and the plan administrator's factual findings." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 616 (6th Cir. Aug. 4, 1998) (referencing *Firestone*, 489 U.S. at 115; *Rowan*, 119 F.3d at 435). "When conducting a de novo review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins*, 150 F.3d at 616 (referencing *Perry v. Simplicity Engineering, a Div. of Lukens General Industries, Inc.*, 900 F.2d 963, 966 (6th Cir. 1990), *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 437 (6th Cir. 1997)).

"If an employee benefits plan gives a plan administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, then a district court reviews

the decision to deny benefits under an arbitrary and capricious standard." *Bancroft v. Tecumseh Products Company*, 949 F. Supp. 1294, 1298-99 (E.D. Mich. 1996) (citing *Firestone*, 489 U.S. at 115). "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115 (citing Restatement (Second) of Trusts § 187, Comment d (1959)). *See also Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979, 983 (6th Cir. 1991); *Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376, 380-381 (6th Cir. 1996) ("the Plan language granted the administrator discretion to determine eligibility for benefits, and the district court should have applied an arbitrary and capricious standard of review.").

"[D]eferential review is appropriate only where the benefits plan clearly grants discretionary authority." *Lake v. Metropolitan Life Insurance Company*, 73 F.3d 1372, 1376 (6th Cir. 1996) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1372 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994)). *See also Bancroft*, 949 F. Supp. 1294, 1299 (E.D. Mich. 1996) (citing *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1571 (6th Cir. 1992) ("The Sixth Circuit has interpreted *Firestone* to require that the plan 'expressly' give discretionary authority to the administrator."). "Further, a plan may grant discretionary authority over some aspects without granting such authority over others." *Lake*, 73 F.3d at 1376 (citing *Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir.1991)).

3.      **Evidence to Be Considered under ERISA**

"[W]hen reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made."  *Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979, 986 (6th Cir. 1991).  "In reviewing a final decision, this court must consider what occurred during the administrative appeals process."  *Id.*

"Regardless of which standard of review applies, the court is limited to a consideration of the evidence which was included in the record before the plan administrator."  *Myers v. Iron Workers Dist. Council of Southern Ohio & Vicinity Pension Trust*, No. 2:04-CV-966, 2005 WL 2979472, *1 (S. D. Ohio Nov. 7, 2005); *Foreman v. Fortis Benefits Ins. Co.*, No. 2:03-CV-573, 2005 WL 1917448, *2 (S. D. Ohio Aug. 10, 2005) (same); *Biondo v. Life Ins. Co. of North America*, 116 F. Supp. 2d 872, 873 n.1 (E. D. Mich. 2000) ("the *Wilkins* court instructed district courts to conduct a 'de novo' or 'arbitrary and capricious' review based solely upon the administrative record and render 'findings of fact' and 'conclusions of law' accordingly.") (citing *Wilkins*, 150 F.3d at 619); *Shackelford v. Continental Cas. Co.*, 96 F.Supp.2d 738, 743 n.5 (W. D. Tenn. 2000) (same); *Eriksen v. Metropolitan Life Ins. Co.*, 39 F.Supp.2d 864, 865 (E. D. Mich. 1999) (same).

"The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges."  *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring).  "This language implies a claimant must identify the specific procedural challenge(s) about which he complains and that discovery must then be limited to

those procedural challenges." *McCann v. Unum Life Insurance Company of America*, 384 F.Supp.2d 1162, 1168 (E. D. Tenn. 2003).

"Because the Supreme Court has held that a conflict of interest on the part of a plan administrator is a relevant factor for a court to consider when reviewing an administrator's decision to deny benefits, it stands to reason that discovery of a specifically identified conflict of interest on the part of the administrator is permissible where a claimant can show good cause to believe such a conflict of interest may exist." *McCann*, 384 F.Supp.2d at 1168 (internal citation to *Bruch*, 489 U.S. at 115, omitted). The court concluded that "1) where a claimant identifies specific procedural challenges concerning an administrator's or fiduciary's decision to deny ERISA benefits, and 2) the claimant makes an initial showing to the court that he has a reasonable basis to make such procedural challenges, then good cause exists to permit the plaintiff to conduct appropriate discovery." *Id*. "Appropriate discovery is discovery that is strictly circumscribed to obtain potential evidence concerning the identified procedural challenges. Under these circumstances, discovery which requests the administrator or fiduciary to rehash the medical reasons for its denial of the plaintiff's claim is not appropriate." *Id*.[5]

"Where, however, an ERISA plaintiff comes forward with a reasonable basis to believe that this conflict of interest has solidified into conscious, concrete policies, procedures, and practices to promote the company's financial welfare at the expense of a full and fair evaluation of the plaintiff's claim for benefits, then the plaintiff should be allowed to conduct limited

---

[5]*McCann v. Unum Life Insurance Company of America*, 384 F.Supp.2d 1162, 1168 (E. D. Tenn. 2003) (neither of the newspaper articles attached to plaintiff's motion to compel identified "any specific procedural problem concerning the manner in which the defendant processes disability claims . . . [n]or are plaintiff's interrogatories targeted to obtain discovery about a specific procedural deficiency.").

11

discovery to determine whether such policies, procedures, and practices do actually exist and, if so, to what extent they interfered with the fair review of the plaintiff's claim for benefits." *Bennett v. Unum Life Ins. Co. of America*, 321 F.Supp.2d 925, 932-933 (E. D. Tenn. 2004).

## E.   Analysis

## 1.   Parties' arguments

## a.   Defendants' motion

First, defendants argue, "[p]laintiff has alleged no procedural due process argument–nor can the claim exist[.]" Mtn. Br. at 3-4.  They contend that plaintiff's pleadings do not hint at a procedural due process claim and "[p]laintiff was given ample notice and an[] opportunity to submit any and all materials she desired."  Mtn. Br. at 3.  Defendants contend that "far from any procedural due process failures, Kemper 'bent over backwards' to give [p]laintiff all the extra time she needed to submit materials.  There can be no discovery on this issue."  Mtn. Br. at 4.

Second, they argue, "[t]here are no procedural bias claims–nor can one exist[.]"  In other words, "the Complaint does not even hint at any bias *from a procedural point of view*."  Mtn. Br. at 5.  Within this argument, defendants rely upon *Schey v. Unum Life Ins. Co. of North America*, 145 F.Supp.2d 919 (N. D. Ohio 2001).  Here, defendants contend, "even if [p]laintiff thinks there is a conflict of interest, that does not entitle her to any discovery in this case under *Wilkins* as that is a substantive conflict, not any bias from a procedural standpoint."

Third, they argue, "[t]he proper perspective to determine procedural claims is solely from plaintiff's complaint[.]" Mtn. Br. at 5.  In support of this argument, defendants cite *Brooks v. General Motors Corp.*, 203 F.Supp.2d 818, 823 (E. D. Mich. 2002).  Here, defendants contend, plaintiff "simply makes a claim for benefits under 502(a)(1)(B) and nothing else[.]"

12

Finally, they argue, "[n]o discovery 'fishing expeditions' [are] allowed[.]" Mtn. Br. at 3-6.[6]

**b.    Plaintiff's response**

Referring to the July 9, 2003 denial, plaintiff argues that "[d]efendant wrongfully required [p]laintiff to submit objective evidence of significant impairments in physical functioning, when this standard is not stated in the Plan, and is not defined by it." Rsp. ¶ 8. Plaintiff claims that review of the administrative record, which her counsel did not have before the instant complaint was filed, reveals that "[d]efendant's medical reviewers were under the impression that [p]laintiff could not be disabled unless she presented objective medical evidence showing significant impairments in physical functioning." Rsp. ¶ 11.  In other words, plaintiff argues, "the administrative record reveals evidence that [d]efendant's medical reviewers and employees apparently used the wrong standard when evaluating [p]laintiff's medical records." Plaintiff claims that defendants' medical reviewers and employees "required [p]laintiff to show significant objective impairments in physical functioning that were required to be evidenced by

_____

[6]Defendants' motion anticipated an argument from plaintiff that "she cannot determine whether there is a procedural challenge unless she takes the discovery in the first place." Mtn. Br. at 5.  In support of this argument, defendants cite *Putney v. Medical Mutual of Ohio*, 111 Fed. Appx. 803, 807 (6th Cir. 2004), where the Court found that mere allegations of bias and refusal to permit submission of information during the administrative appeal are not sufficient to require discovery. The Court also determined that plaintiff's presentation of evidence that defendant did not satisfy notice requirements was not significant or determinative.  Distinguishing the case from *Wilkins*, the Court noted that the procedural failures "did not prevent Putney from gaining information necessary to contest his denial of benefits."  *Putney*, 111 Fed. Appx. at 807 (citing *Wilkins*).  As the Court noted, plaintiff did not point to additional evidence that could have influenced or did influence defendant's decision."  *Putney*, 111 Fed. Appx. at 807.  *See also DeWald v. UNUM Provident Corp.*, No. 1:05CV135, 2005 WL 1126742, *2 (N. D. Ohio Apr. 18, 2005).

This opinion does not address the issue anticipated by defendants, because plaintiff does not put forth such an argument.

objective medical diagnostic testing."  Plaintiff claims that this standard is contrary to the Plan's disability definition.  Rsp. Br. at 2.

Plaintiff claims that Stringham and Williams, in their July 9, 2003 and November 21, 2003 denial letters, "wrongfully determined that the medical documentation submitted by [p]laintiff did not substantiate her entitlement to long term disability benefits under the plan, apparently based, at least in part, upon Dr. Ennis' and Dr. Mendelssohn's statements that objective medical testing was required to document [p]laintiff's disability, and that none existed."  Rsp. ¶ 12.

Plaintiff's long term disability policy defines disabled/disability.  In part, it defines disabled/disability as "**a significant change** in your physical or mental condition" that "prevents you from performing . . . the Essential Functions of your Regular Occupation or of a Reasonable Employment Option offered to you by the Employer, and as a result you are unable to earn more than 60% of your Pre-disability Monthly Income."  Compl. Ex. A at 10 of 33 (emphasis added). Therefore, plaintiff argues, "the Plan [does] not require that a claimant must show the presence of 'significant objective findings' or objective diagnostic testing in order to qualify for benefits." Rsp. ¶ 13.

According to plaintiff, "the administrative record evidences that Plaintiff was denied procedural due process because the disability definition that the medical reviewers were using was not the definition provided for in the Plan."  Rsp. ¶ 15.  Plaintiff claims that, pursuant to *Wilkins*, she "is entitled to conduct discovery limited to procedural matters, such as an alleged lack of due process afforded by the administrator."  Rsp. ¶ 16.

Plaintiff argues that it is for a *Wilkins* procedural challenge that she "seeks to take the depositions of the individuals in question."  Plaintiff maintains that "[b]ecause [her] counsel was not provided with the administrative record prior to September 8, 2005 . . . [p]laintiff's counsel could not specifically allege the violation of due process or procedural challenge that existed."  Rsp. Br. at 3.

Furthermore, plaintiff claims, her complaint "does not have to specifically state procedural or due process complaints in an[] ERISA action."  In support of this argument, she cites to *Firestone Tire & Rubber Co.*, 489 U.S. at 115, where the Court stated:  "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  (citing Restatement (Second) of Trusts § 187, Comment d (1959)).  It is plaintiff's position that a procedural challenge "is not a separate cause of action to be separately plead[ed]."  Rsp. Br. at 3.

Plaintiff alternatively requests that, "[i]n the event that the Court determines that [her] Complaint must be amended to allege[] a procedural violation," "the Court enter an Order permitting the filing of such [an] Amended Complaint."  Plaintiff claims she is "entitled to conduct limited discovery pursuant to *Wilkins* to demonstrate for the court the procedural due process violations evidenced by the medical reviewers reports in the administrative record."  Rsp. Br. at 3.

c.     **Defendants' reply**

According to defendants, plaintiff does not explain how her allegations (regarding the timing of her receipt of the administrative record and the physician's determination of an absence of objective findings to support disability) amount to procedural challenges.  Rpl. at 1.

15

First, defendants reply that "[p]laintiff's present counsel never asked for the administrative file prior to final claim denial, and she had a copy anyway." Rpl. at 1-3. Defendants contend that "pointing to things asked for or things not done <u>after</u> the administrator has made a final decision, does nothing to demonstrate a procedural problem <u>prior</u> to a final claim denial."[7] Also, defendants contend that plaintiff's current counsel had the claim file at the time she sent her November 4, 2003 letter. Rpl. at 1. As defendants point out, plaintiff's counsel's November 4, 2003 letter makes reference to the claim file (Doc. Ent. 15 Ex. F);[8] the September 24, 2003 letter to plaintiff's prior counsel was apparently sent with a copy of the administrative record (Doc. Ent. 20 Ex. F); the October 20, 2003 letter from plaintiff's present counsel notes that she received plaintiff's file from plaintiff's prior counsel on October 17, 2003 (Doc. Ent. 15 Ex. D); and the documentation of the October 20, 2003 phone call between plaintiff's current counsel and a Kemper representative (apparently Williams) makes reference to the claim file (Doc. Ent. 20 Ex. K). Rpl. at 1-2. In conclusion, defendants claim that "[t]here is nothing to demonstrate any <u>procedural</u> shortcomings giving rise to a challenge." Rpl. at 3.

Second, defendants reply that "[t]he fact that plaintiff's counsel did not receive a final copy of the administrative file until September 8, [2]005 after filing suit is irrelevant[.]" Rpl. at 3-4. Defendants argue that "not receiving the file after an administrative decision was issued is irrelevant to a procedural challenge[,] and she had the file anyway." In any event, defendants argue, it is not Kemper's fault. They rely upon the portion of Fed. R. Civ. P. 26(d) which

---

[7]Defendants place plaintiff's counsel's March 31, 2004 letter requesting the administrative file into this category. Rpl. at 2-3.

[8]"The Kemper claim file indicates that Ms. Jones reported this injury and condition to Kemper around October 1, 2001." (Doc. Ent. 15 Ex. F at 2).

16

provides in part that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."  In this case, the scheduling conference was held on August 31, 2005.  Defendants claim "[t]his period of time had nothing to do with [Kemper's] behavior."  Rpl. at 3.  According to defendants, "[p]laintiff . . . cannot demonstrate that she formally or informally requested the administrative record after suit was filed in this matter.  So the lapse in time from filing the lawsuit until she received the record was entirely of [p]laintiff's own making.  And she never asked for it anyway."  Rpl. at 4.

Third, defendants reply that "[t]he fact that a physician determined there were 'no objective findings' does not entitle plaintiff to discovery."  Rpl. at 4-5.  Defendants disagree that the physician's requirement of "objective medical evidence" is a procedural challenge entitling plaintiff to discovery because the plan does not mention "objective findings."  Defendants contend that "[i]f the physician required objective evidence and he was wrong about that, there is nothing procedural about it."  Defendants argue it "is a substantive issue that can be addressed in the lawsuit."  Defendants state that "[u]nder Plaintiff's view, any complaint about the way a claim as handled would be a procedural challenge."  They further state that "[p]rocedural means a lack of a procedure itself, not a lack of a decision you agree with."  Rpl. at 4.  Defendants argue that "[p]laintiff points to no lack of adequate procedure, nor could she as more than enough was provided[.]" Rpl. at 4-5.

Fourth, defendants reply that "[p]laintiff never identified from whom she think[s] discovery is proper[.]"  Defendants argue that plaintiff's "failure to identify any individuals provides no basis to support her claim."  Rpl. at 5.[9]

Finally, defendants reply that "[w]hether plaintiff 'alleged' a procedural due process [issue] is irrelevant now[.]"  Rpl. at 5.  As defendants point out, this Court has stated that "[i]f a procedural challenge is alleged, such as lack of due process afforded by the administrator or bias on its part, only then may the district court consider evidence outside the administrative record." *Brooks*, 203 F.Supp.2d at 823 (citing *Wilkins*, 150 F.3d at 619).  According to defendants, "there is nothing [plaintiff] could allege was a procedural due process issue . . . regardless of whether one was pled.  The only evidence she pointed to in the administrative record does not demonstrate or even hint at a due process problem."  Rpl. at 5.

For these five reasons, defendants argue, "[p]laintiff is not entitled to discovery."  Rpl. at 5.

**2.     Conclusion**

Plaintiff's claimed procedural challenge - that the wrong standard was used in determining plaintiff's eligibility for disability benefits - is not the type anticipated by *Wilkins*. As previously noted, "[t]he district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part."  *Wilkins*, 150 F.3d at 619.  Plaintiff's claim does not satisfy either exception.

---

[9]At the October 17, 2005 hearing, plaintiff's counsel stated that she wanted to take the depositions of the plan administrator, Dr. Ennis and Dr. Mendelssohn.

First, as to the due process exception, at least one court has stated that "[t]he failure of the administrator to provide the insured with the notices required by the plan and with the opportunity to submit evidence in support of his or her claim before the decision thereon can open the door to additional evidence." *Schey v. Unum Life Ins. Co. of North America*, 145 F.Supp.2d 919, 922 (N. D. Ohio 2001). The court further stated: "Schey does not complain that she has additional evidence of her disability that the administrator refused to consider. She has not asserted that she failed to receive appropriate notice or that she did not have an opportunity to be heard. Instead, she disputes the decision of the administrator to classify her as mentally disabled rather than physically disabled. That decision constitutes a substantive determination under the plan, not a procedural decision of the kind referred to in the *Wilkins* decision." *Schey*, 145 F.Supp.2d at 925. Plaintiff's claim that she "was denied procedural due process because the disability definition that the medical reviewers were using was not the definition provided for in the Plan[,]" Rsp. ¶ 15, is not a claim that she was obstructed from offering additional disability evidence or that she was not given proper notice or that she did not have an opportunity to be heard. Therefore, under *Schey*, it is not the type of *Wilkins* due process claim that warrants limited discovery.[10]

Second, as to the bias exception, the *Schey* court stated that "*Killian [v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514 (6th Cir. Jun. 30, 1998)] in effect establishes an

---

[10]*See also Heffernan v. UNUM Life Ins. Co. of America*, 101 Fed. Appx. 99 (6th Cir. 2004). In *Hefferman*, plaintiff filed a complaint based upon 29 U.S.C. § 1132(a)(1)(B). *Hefferman*, 101 Fed. Appx. at 104. "She raised a dispute over the contents of the administrative record, and the district court granted discovery limited to that issue." *Id*. at 104. "The lower court properly authorized discovery in order to explore a procedural challenge. There is no requirement that discovery generate actual admissible evidence in order to qualify for repayment under 29 U.S.C. § 1132(g)(1). Attorney's fees for this effort were properly included in the lower court's award." *Id*. at 109.

irrebuttable presumption that a conflict of interest, or bias if you will, exists whenever the same entity wears both the administrator's hat and the payor's hat.  It requires the district court to weigh the existence of that conflict in deciding if the administrator acted improperly."  *Schey*, 145 F.Supp.2d at 923.  "Because of this irrebuttable presumption, no need exists for discovery of evidence to establish it."  *Id.  See also Wilson v. Unum Life Ins. Co. of America*, No. 3:03-CV-0070, 2004 WL 2757914, *2 (M. D. Tenn. Jan. 22, 2004).  "Conceivably, therefore, the only discovery as to bias or conflict that the *Wilkins* guideline might authorize would occur in a situation where the administrator did not have responsibility for paying the benefits."  *Schey*, 145 F.Supp.2d at 923.  The Court went on to say that "[t]he discovery contemplated by the Court in *Wilkins*, therefore, does not include discovery directed to the administrator's conflict of interest for purposes of determining the proper standard of review."  *Schey*, 145 F.Supp.2d at 923.  The court explained that "[u]nder the *Wilkins* guideline, a claim of bias unrelated to a procedural challenge will not justify discovery of evidence outside the administrative record."  *Schey*, 145 F.Supp.2d at 925.

Plaintiff's claim that the wrong standard was used to determine her eligibility for disability benefits is not like the due process or bias exceptions as set forth in *Wilkins* and as described in *Schey*.  The conclusion that plaintiff's claim is not of the type anticipated by *Wilkins* is supported by examination of plaintiff's complaint.  Following dismissal of Count II, the only remaining count in plaintiff's complaint is Count I - an action based upon 29 U.S.C. § 1132(a)(1)(B) to recover full benefits.  In *Brooks v. General Motors Corp.*, 203 F.Supp.2d 818, 823 (E. D. Mich. 2002), this Court construed plaintiff's breach of contract claim as a claim for benefits under 29 U.S.C. § 1132.  The Court stated, "[t]he Complaint is void of any procedural

claim against Defendants under § 503 of ERISA, 29 U.S.C. § 1133 nor any breach of fiduciary claim under 29 U.S.C. § 1109.  Plaintiff has not sought to amend the Complaint to add any further claims such as a procedural claim against Defendants.  At this juncture, Defendants and this Court have not been put on notice that Plaintiff is making a procedural claim, therefore, pursuant to *Wilkins*, the Court can only consider the documents before the Plan Administrator." *Brooks*, 203 F.Supp.2d at 823.  *See also Wilson*, 2004 WL 2757914, *2 (internal footnote and citation omitted) ("Plaintiff alleged in her Complaint that after Defendant denied Plaintiff's claim for benefits on June 17, 2002, Plaintiff submitted certain additional information substantiating her claim that Defendant refused to consider.  Such an allegation of a procedural error could support a request for discovery outside of the administrative record, but not in the present case.").  In the instant case, plaintiff alleges that "[t]he denial of [her] disability benefit payments is in direct violation of the terms of the Plan."  Compl. ¶ 11.

In any event, the timing of plaintiff's receipt of the administrative record does not change the substantive character of the claim she makes within the instant motion - that the wrong standard was used to measure her eligibility for disability benefits.  In plaintiff's counsel's November 4, 2003 letter to Williams of Kemper, plaintiff's counsel submitted records which Kemper did not appear to have in its file.  (Doc. Ent. 15 Ex. F).  Plaintiff's October 3, 2005 response notes that the September 21, 2004 complaint "could not specifically allege the violation of due process or procedural challenge that existed[,]" because plaintiff's counsel did not have the administrative record until September 8, 2005.  Rsp. Br. at 3.  At the October 17, 2005 hearing, plaintiff's counsel stated that the entire file was never sent to Adler.  However, with regard to the instant motion, the Court need not consider which portions of the administrative

record were omitted when it was sent to Adler. Even if plaintiff had not received the entire file until September 8, 2005, the conclusion that the claim she makes with regard to the instant motion (that the wrong standard was used in determining her eligibility for benefits) does not qualify as a *Wilkins* exception remains unchanged.[11]

## II.   ORDER

Consistent with the foregoing opinion, defendants' September 19, 2005 motion for protective order (Doc. Ent. 14) is GRANTED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

s/Paul J. Komives
PAUL J. KOMIVES
Dated: 12/16/05                UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 16, 2005.

s/Eddrey Butts
Case Manager

---

[11]I arrive at the conclusion to grant defendants' motion for protective order without ruling on plaintiff's request for an order permitting her to file an amended complaint. Rsp. Br. at 3. Such a request is more appropriately the subject of a motion to amend, and such a motion is not before the Court at this time.